Before we start our arguments this morning, Judge Rawlinson and I would very much like to thank and acknowledge Judge Murphy, who is visiting with us from the Tenth Circuit, and we're very happy that he could come out and help us out with our workload. So Judge I'm going to call the cases just as they appear on the calendar, and we're going to start with Bynoe v. Baca. J. Bynoe Good morning, Your Honors, and may it please the Court. My name is Jeremy Barron, and I'm here on behalf of Michael Bynoe. I'd like Court originally dismissed Mr. Bynoe's petition for a procedural reason that's no longer valid in light of this Court's current case law. Now as it turns out, that's exactly the sort of situation where a Rule 60b-6 motion may be appropriate in a habeas case. But the lower Court erroneously denied Mr. Bynoe's Rule 60b-6 motion, and in its analysis made a series of legal errors. So as a result, we're asking this Court to reverse and remand with instructions to reopen the case. So Counsel, would it be fair to say that in order for you to obtain relief under Rule 60b, we would have to determine that the MENA decision constitutes an extraordinary circumstance? Yes, Your Honor. The MENA decision is essentially the impetus for us to have brought the motion, and MENA, along with various other factors in this case, give rise to the extraordinary circumstance. So why should we conclude that one decision constitutes an extraordinary circumstance as so as to warrant relief under Rule 60b? Right. So under Phelps, Phelps is a similar decision where there is a procedural change in the law governing habeas petitions. And Phelps explained that when you have that sort of procedural change in the law that shows that the district court erroneously dismissed a petition, that that sort of change in law can give rise to extraordinary circumstances. And what the decision in Phelps instructs courts to do is to look at that change in law and various factors and circumstances in the case in making the ultimate decision, whether there are extraordinary circumstances. And there are six factors, the type of the change in law among others, and as we've explained in our briefs, all six of those factors point in favor of 60b-6 relief in this case. So was MENA a change in law or just a clarification? How do you characterize that? So MENA resolved an unsettled question of procedural law. The unsettled question was, does a district court have authority to issue a stay when a petition contains no exhausted claims? And the MENA decision expressly says our circuit has not yet had the opportunity to answer that question. So before MENA, that was an open question in the circuit. Well, our case law at that time had been that a fully unexhausted petition had to be dismissed. Well, that was the state of the case law. And we couldn't stay it. It wasn't unsettled. It was settled, but it just was settled in a way that was not favorable to your client. Well, I would respectfully disagree because the MENA decision, which is a published decision, says that the Court had not yet addressed that question. So that portion of MENA, I think, is binding precedent. Now — Well, there was a — there was rinds which allowed the district court to stay and obey a petition when there was exhausted and unexhausted claims, right? Correct. So — so rinds left open — that raised the question of whether or not you could stay a fully unexhausted petition. That's correct. So MENA — I'm sorry. Rinds involved a petition that was mixed. So rinds didn't settle the question, may a district court issue a stay of a fully unexhausted petition. And that question remained open in the circuit from rinds up until MENA. So the state of the law in the circuit was unsettled. And as a result, under Phelps, what Phelps says is, if the law is unsettled at the time the district court issues its original judgment, and then later on a published decision from the circuit settles the law, that is the most — one of the more extraordinary types of changes in law. That was what was going on in Phelps, is there was an open question about whether you get an additional 30 days after the California Supreme Court dismisses a certain type of petition. That was unsettled in the circuit at the time Mr. Phelps brought his original petition. The district court resolved that question against Mr. Phelps. And then a few years after that, the Ninth Circuit resolved that open question. And the Phelps decision explains, that's the sort of change in the law that is one of the more extraordinary types of changes that should give rise to 60 v. 6 relief. Usually when the law is unsettled, we have district courts going in different directions. Do we have that in this case? I haven't exhaustively surveyed what all the district courts in this circuit were doing. I think a lot of district courts were concluding that they couldn't stay this type of petition. But be that as it may, I mean, that might be true in Phelps too, that a lot of district courts were ruling against petitioners on that same legal question. But I think, you know, MENA's a published decision. MENA says the court hadn't yet addressed the question. It was open since Rhines, so this is a more extraordinary type of change in the law. If my recollection serves me right, I thought there was another Supreme Court that would be stayed, but they didn't really address it. Yes, so you might be referring to Pace? Yes. That's the one, Pace. So Pace was a decision involving the question, does an untimely state petition hold a federal statute of limitations? The Supreme Court said, no, it doesn't. There was an argument by the habeas petitioner in Pace that, well, it's unfair if a petitioner is litigating in state court on a good faith belief the state court petition is timely. Turns out the state court says it's untimely. They get the federal court and their time barred. And what the Supreme Court said is, well, you can file a protective petition in federal court to avoid that situation. But Pace didn't purport to explain or hold when is the state available, when isn't it available. Now, of course, MENA relied on Pace in reaching its conclusion, but Pace didn't settle the issue. It was just helpful precedent. And I'd note that the parties in this case back in 2008, 2009, when we were litigating the state issue originally, the parties cited to Pace, neither of the parties thought that Pace definitively settled the question one way or the other. And the district court's decision back in 2009 didn't mention the Pace decision whatsoever. Speaking of 2009, wasn't there the denial of a certificate of appealability on this issue? Yes, Your Honor. That's correct. Yeah. So what effect does that have on your argument? Well, that's an unpublished order. And if you look at Phelps again, what Phelps says when it's framing the question, is it settled or unsettled, Phelps says the law is settled at the time if there is a published circuit court or U.S. Supreme Court decision that resolves the question. So yes, there was a COA denial back in 2011. That's an unpublished, unprecedented order. There was no published decision from the circuit or the U.S. Supreme Court. But if we find that persuasive, do you lose? Well, I'm not sure what you mean by persuasive. Well, the certificate of appealability says that you do not have, that the action that you're seeking, the issue that you're seeking to pursue does not have merit, essentially, is what the denial of the certificate of appealability is saying. Right. But under Phelps, an unpublished order doesn't settle the law. And with all due respect to the Court, we think that the COA denial back in 2011 was incorrect, that we have pled at the very least colorable claims for relief. And in addition, that this issue, this procedural issue, was reasonably debatable back in 2009 because MENA said it was open back then and MENA resolved it in our favor. And I see that I'm at two minutes. If I could reserve the remainder of my time. Yes. Thank you. Good morning and may it please the Court, my name is Natasha Gabriel on behalf of Respondents Appellees. Your Honors, this case turns on the preservation of finality of judgments. And this Court should decline to revisit the finality of this judgment for two main reasons. First, Bino did not bring his motion within a reasonable time under Rule 60C. And second, he cannot demonstrate extraordinary circumstances. So in your view, when should he have filed his current 60B? Your Honor, it doesn't turn on when specifically. There's not a bright line rule for... Well, you just said it was untimely. So I wonder why. Why did you say that? Not that it was untimely, Your Honor, but that it was brought not within a reasonable time. And Ashford... Okay, then what's the time period we're talking about that you think he should have brought this? So the reasonable time period does depend on the facts and circumstances of each case, as demonstrated in Ashford. Okay. And in Ashford, we take into consideration finality, the reason for delay, practical ability of litigant to learn of the grounds relied upon, and prejudice to the other parties. Here, we don't deny that there was not a significant delay in between when Mina came down and when Petitioner filed... Okay. So when was Mina decided? Mina was decided in 2016, Your Honor, and this motion... When did he file his motion, this current motion? Approximately seven months later. And your position is that that's unreasonable, an unreasonable delay? No, Your Honor. Our position is that we need to look at when the order became final. Which order? The order denying the stay. So that happened in 2009. This court denied a certificate of appealability in 2011, and the Supreme Court denied cert in 2012. From 2009 to 2016, that's a seven-year delay. That's a final judgment. Let me ask you this. Given the state of the law, what was he supposed to have done? He went to the Supreme Court. Yes, Your Honor. He went to the Supreme Court, and the cert was denied in 2012, stating that there was no issue to resolve. And in fact, this court denied a certificate of appealability as well, showing that there were no reasonable jurists that would reopen this final judgment, that at that time, there was no reason to stay a fully unexhausted petition. So you're saying his choice would have been to file a 12B6, excuse me, a motion under Rule 60 in front of the same judge who had said that you can't stay a petition where all the claims are unexhausted, or he could have filed a second or successive. Those were his choices, right? Yes, Your Honor. All right. And they both would have been futile, right? I can't speculate. Well, the judge who said you cannot get a stay when you have completely unexhausted claims is not going to grant a 60B, right? Your Honor, so to, in habeas, in order to have a, to, you still have to, excuse me, you still have to meet the Rhines factors. So it's not a mandate that says you can't do this or you can do this. It's up to the judge. Well, my question is, are you saying it would not have been a futile act for him to file a 60B in 2011? It would not have been a futile act? I wouldn't be able to speculate as to whether it would be futile or not because the court does . . . It would come before the very court and the very judge who had already said you can't do this, and he's asking you to do the same thing. Wouldn't you call that futility? Hard to say, but . . . Yeah, it's hard. It is hard to say. It's hard for you to say, but do you really think that a district court judge would grant a motion under those circumstances that Judge Murphy has just posed? Realistically speaking, no. No. Right. So just say it. Right. Right.  earlier. But it doesn't . . . That same judge, had he filed for a second or successive, would have declined to allow him to file a second or successive, correct? If he didn't meet those standards under ADPA for bringing a second and successive. And he couldn't? Unlikely.  All right. Boy, that's hard. Futile? But, Your Honor . . . Counsel, what's your position as to whether or not the law was settled on the point that Mena addressed? Your Honor, I wouldn't say that it was unsettled, because actually, Mena, what Petitioner didn't fail to recognize, is that this court came down with Raspberry v. Garcia. Now Raspberry v. Garcia, the way it was interpreted at the time by the district courts, was that they did not have discretion to stay a fully unexhausted petition. And in fact, this district court put the words, it is well established in this circuit that we cannot stay fully unexhausted petitions. And that's at EOR 7. Now when Mena came down, this court clarified and said, no, that's not really what we said in Raspberry. Raspberry turned on the facts and circumstances of that particular case. It wasn't an overarching, you can't do this. That's what Mena clarified. However, almost all the district courts, when there was a fully unexhausted petition in front of them, along with a motion to stay, interpreted Raspberry as settled law stating that they cannot stay unexhausted petitions. And Mena said that effectively, that was the wrong interpretation? Correct, Your Honor. So I guess we follow what the Ninth Circuit says, and that is that Raspberry was not clear in the sense that the district courts had been interpreting it, and therefore the law is unsettled. Your Honor, I wouldn't say that it was unsettled, because Raspberry was being interpreted. There was Raspberry. Okay, who's the best to interpret what Raspberry says, the district courts or the Ninth Circuit? It's absolutely the Ninth Circuit, but Phelps also says, Your Honor, that we can look at all of the facts and circumstances surrounding the case, and it's not unreasonable for this court to look at how those district courts were interpreting Raspberry at that time. Now after Mena came down, obviously that said, you know, Raspberry didn't say that, so the keeping in mind that Rule 60B and the Phelps factors aren't rigid, you do look to the discretion of the courts. If the court applied the correct law, if the court balanced the equities, which is what the district court did here when it determined that a Rule 60B, when it denied the Rule 60B motion. It was settled, it was just settled the wrong way, according to the court. I understand, as I understand it, if he were to prevail before this court now, then what would happen is it would go back to the district court, and he's just going to ask the district court whether, for a stay and a bay, right? If I were to prevail in this court now? No. If you were to prevail. No. If the petitioner were to prevail in this court now on his claim, and we agree with him that the district court improperly denied the 60B, don't we just place him back in the procedure that he would have been in as he gets to ask for a stay and a bay? You're correct, Your Honor, but he still has to meet the Rhine's factors. Well, I didn't say he was going to get it, I said he gets to ask for it again. Yes. Right? Yes. And the district court would get to apply all the factors that one would look to in deciding whether to grant a stay and a bay. Yes, Your Honor, but we do need to take into consideration that the petitioner did go back to state court eventually, and failed to exhaust these claims once again. So he had his chance, and failed. Well, maybe the district, if it goes back to the district court, maybe in the end result, the district court is not going to grant him a stay and a bay, but who knows, right? Who knows, Your Honor, and the question I pose is, do we want to waste valuable judicial resources on going back to state court, where a petitioner is trying to stay an untimely and unexhausted petition yet again? When he had the chance to go back to state court, he did, and he failed to exhaust yet again. So when did he go back to state court? He went back in 2015, Your Honor, sorry, excuse me, in 2012, months before the Supreme Court denied cert on this issue. Okay, anything else? Because you're over your time. Oh, I see my, I apologize. For the reasons that we've stated, we ask that this court affirm the district court's order. Okay, thank you. Your Honors, I'd just like to take a step back for a minute and emphasize the claims for relief that we're talking about here. This is a habeas petitioner who has a severe, long documented history of mental health issues. That's part of the reason why he hasn't exhausted his claims at this point, is because he has these serious mental health issues. That's why we're going to argue in favor of tolling and good cause for a stay. There are indications that he was seriously mentally ill at the time of the alleged offense. He was found incompetent shortly after his arrest. He had to be medicated at a psychiatric institution for about eight months before he could be brought back to the level of competency. So this is an individual who would have had a colorable, not guilty by reason of insanity defense, but the Nevada legislature had unconstitutionally abolished the insanity defense in 1995. And then a year after Mr. Bino's guilty plea, the Nevada Supreme Court held that was unconstitutional and similarly situated defendants ought to have the opportunity to withdraw their pleas, go back and pursue a not guilty by reason of insanity defense if that's what they want to do. So these are pretty significant claims for relief. It's a pretty extraordinary circumstance here. And the Supreme Court's decision in Buck focused the attention on the claims for relief there. We know that there are differences between the claims in Buck and the claims here, but we do think the claims for relief here are pretty serious and pretty stark. And the whole point of 60 v. 6 is to allow a petitioner with claims like this, whose petition was dismissed for an erroneous procedural reason, to have the opportunity to go back into court and to continue litigating in the hopes of getting a merit system. Counsel, of course, if we rule in your favor, it would not be only for your case if it's a published decision, but it would be for all cases in the Ninth Circuit. So would that result in any petitioner who has been denied stay in abeyance pre-MENA to reopen their case? Well, I see I'm over my time. May I answer? Please answer. Answer the question. Thank you. I think that the petitioner would still have had to have filed the 60 v. 6 within a reasonable time of MENA. At this point, we're going on, we're over three, three and a half years since the MENA decision. So any petitioner who hasn't filed their 60 v. 6 yet, I don't think is going to, well, I don't want to take a position on that. But there may be problems in showing the reasonable time, meeting the reasonable time. I have one final question. Are you familiar with the Supreme Court's decision in Gonzalez v. Crosby? Yes, Your Honor. It appears to say that if a district court's interpretation was consistent with the then prevailing interpretation of the circuit, that not every interpretation after that, that changes would be grounds for Rule 60b relief. Why doesn't that foreclose your case? Well, because if you look at Phelps, it talks about that. Well, I'm not talking about Phelps. I'm talking about Gonzalez v. Crosby. Why doesn't that language foreclose your claim? Because there was no prevailing interpretation. I know Your Honor is focused on Gonzalez, but Phelps, I think, is interpreting Gonzalez and saying, okay, what does Gonzalez mean? When is a change extraordinary? And under Phelps, which is a binding interpretation of Gonzalez, there needs to be a published decision in order to create that prevailing interpretation. But the language in Gonzalez says it is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this court arrived at a different interpretation. The court, Gonzalez says that's not an extraordinary circumstance. Why isn't that language binding on us? All right. So in Gonzalez, the Eleventh Circuit had a published decision that resolved the issue against Mr. Gonzalez at the time of the original judgment. In Gonzalez, the U.S. Supreme Court says it's not all that extraordinary for us to grant cert and overturn a published decision from a lower circuit court. Phelps then looks at the analysis in Gonzalez and says, well, if there isn't a published decision from the circuit at the time of the original judgment, that is extraordinary. Here, there was no published opinion from the circuit at the time of the original judgment. Under Gonzalez and Phelps, that means it's extraordinary. All right. Thank you, counsel. Thank you. Thank you, counsel. Thank both of you. The matter is submitted at this time.
judges: Murphy, Paez, Rawlinson